UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DANIEL JOHN TIEDT,**

        **Plaintiff,**

**v.**                                                 **Case No:   6:18-cv-2087-Orl-18EJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to subchapter XVI of the Social Security Act (the "Act"), as amended, 42 U.S.C. §§ 405(g) and 416, to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Supplemental Security Income ("SSI") under the Act. Upon a review of the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memorandum submitted by the parties, I respectfully recommend that the Commissioner's final decision in this case be affirmed, pursuant to sentence four of 42 U.S.C. § 405(g).

    **I.**      **BACKGROUND**

Plaintiff filed for SSI benefits on October 27, 2015. Tr. 216–230. He alleged an onset of disability on October 27, 2015, due to spine disorder, right rotator cuff disorder, and anxiety. Tr. 60, 83. His application was denied initially and upon reconsideration. Tr. 98–100, 103, 104–108. Plaintiff requested and received a hearing, which was held on November 7, 2017, before an ALJ. Tr. 21–52. At the time of the hearing, Plaintiff was 59 years old with a high school education. Tr. 90. In a decision dated February 14, 2018, the ALJ found Plaintiff not disabled, as defined under

the Act, through the date of her decision. Tr. 78–97. Plaintiff timely filed a Request for Review of the ALJ's decision, which was denied. Tr. 1–6. Plaintiff then timely filed this action for judicial review on December 4, 2018. (Doc. 1.) Plaintiff has exhausted the available administrative remedies, and this case is properly before this Court.

On judicial review, Plaintiff argues that the ALJ erred by failing to provide a function-by-function assessment of Plaintiff's ability to do work-related physical activities in reaching her residual functional capacity ("RFC") determination. (Doc. 26 at 8.) Additionally, Plaintiff contends that the ALJ erred by not including a mental limitation in Plaintiff's RFC. (*Id.* at 11.)

## II.     THE ALJ'S DECISION

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. § 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–1240 (11th Cir. 2004). Plaintiff bears the burden of persuasion through step four while at step five, the burden shifts to the Commissioner. *Id.* at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis. Tr. 83–91. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 27, 2015, the date of application for SSI benefits. Tr. 83. Although Plaintiff worked after his alleged onset date doing sprinkler repair, his earnings never exceeded substantial gainful activity thresholds. Tr. 29, 90. At step two, the ALJ determined that Plaintiff had the following severe impairments that

significantly limited the ability to perform basic work activities: degenerative disc disease, diabetes mellitus, neuropathy (bilateral feet), and obesity. Tr. 83. However, the ALJ found that Plaintiff's anxiety disorder, depressive disorder, and personality disorder, considered both separately and together, caused no more than minimal limitations to Plaintiff's ability to perform basic mental work activities, and were therefore, non-severe. *Id.* At step three, the ALJ found that, although Plaintiff's physical impairments were severe, they did not medically meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 86.

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c). *Id.* At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work as a retail store owner, pipe fitter, or construction worker. Tr. 90. Proceeding to step five, the ALJ, considering Plaintiff's age, education, work experience, and RFC, concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. Tr. 90–91. Ultimately, the ALJ found that Plaintiff was not under a disability at any time from October 27, 2015 through the date of the administrative decision. Tr. 91.

### III.   STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks omitted).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Id.* However, though the review is limited, "the entire record must be scrutinized to determine the reasonableness of the Secretary's factual findings." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

IV. **DISCUSSION**

    A. **Issue One: Whether the ALJ Completed a Proper Function-By-Function Analysis in Determining Plaintiff's RFC?**

Plaintiff contends that the ALJ failed to go through a function-by-function assessment before reaching an RFC determination. (Doc. 26 at 8.) Specifically, Plaintiff claims that the ALJ did not perform the function-by-function analysis to determine Plaintiff's ability to do work-related physical activities at a medium level of work. (*Id.*) The Commissioner responds that the ALJ appropriately discussed the relevant evidence in accordance with Social Security Ruling ("SSR") 96-8p, and that discussion, particularly the ALJ's finding that the Plaintiff could perform a full range of "medium work," as defined in the regulations, obviated the need to "further discuss Plaintiff's ability to perform each of the exertional demands." (*Id.* at 10.) Upon review, the undersigned finds Plaintiff's argument without merit.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). Determined before step four, "[a]long with his age, education and work experience, the claimant's residual functional capacity

is considered in determining whether the claimant can work." *Id.* (citing 20 C.F.R. § 1520(f)). Social Security regulations specify that:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p.[1] The ALJ ultimately decided that Plaintiff was capable of performing a medium level of work.[2]

The ALJ considered a number of sources in making the RFC determination—specifically, Plaintiff's own testimony, medical opinions, and the medical records. Tr. 86–90. Plaintiff testified that his pain limits his ability to work, including his ability to lift, squat, bend, stand, reach, walk, kneel, and climb stairs. Tr. 87. But the ALJ contrasted this testimony with Plaintiff's own testimony that he lives alone and has no difficulty with his personal care. *Id.* He can drive, cook simple meals, and do household chores. *Id.* The ALJ also reviewed Plaintiff's treatment history, which indicated that, while Plaintiff had a history of back pain dating to 2010 from a motor vehicle accident, there was nothing in the record to indicate that Plaintiff could not perform the range of medium work. Tr. 88. Even with his back pain, Plaintiff was still able to do some work repairing sprinklers, as his condition had not worsened during the relevant time frame. Tr. 89. Rather, he

---

[1] Title 20 C.F.R. §§ 404.1545 and 416.945 refer to the claimant's physical, mental and other abilities affected by the impairment.

[2] The ALJ's RFC determination consisted of the following: "After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 416.967(c)." Tr. 86. Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). If someone can do medium work, they can also do sedentary and light work. *Id.*

had intermittent chiropractic treatment and effectively managed his pain with Tylenol. *Id.* Further, Plaintiff did not have any physical therapy treatment, nor did he require procedures on his back, neck, or shoulders. *Id.* Moreover, the medical records did not indicate a limitation on Plaintiff's range of motion, reflex, or strength. *Id*. The ALJ also noted that Ronald Kline, M.D., a state agency medical consultant, determined that Plaintiff was limited to medium work with no additional limitations. Tr. 71, 89.

Taken together, the ALJ complied with SSR 96-8p by considering Plaintiff's functional limitations and restrictions before proceeding to express Plaintiff's residual functional limitations in terms of exertional levels. An ALJ is not required to "'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow [the reviewing court] to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Astrue*, 355 F. App'x 260, 263 (11th Cir. 2009) (per curiam) (unpublished). Furthermore, the ALJ's analysis of the evidence and conclusion that Plaintiff could perform medium work indicated how much work-related activity he could perform because medium work is specifically defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c); *see Freeman v. Barnhart*, 220 F. App'x 957, 959–60 (11th Cir. 2007) (per curiam) (unpublished). Thus, based on a review of the ALJ's decision, the undersigned concludes that the ALJ performed a proper RFC function analysis, supported by substantial evidence, of Plaintiff's ability to do work-related physical activities.

### B. Issue Two: Whether the ALJ Properly Considered the Opinions of Record in Concluding that Plaintiff Had Non-Severe Mental Impairment?

Next, Plaintiff argues that the ALJ erred by concluding at step two that Plaintiff had a non-severe mental impairment, which led the ALJ to exclude any mental or non-exertional limitations in Plaintiff's RFC. (Doc. 26 at 11); Tr. 86. Specifically, from what the Court can glean, Plaintiff

takes issue with the weight the ALJ assigned to the opinions of (1) one-time examining physician Wende Anderson, Psy.D., in light of opinions in the record from two other doctors, and (2) state agency psychologist James Levasseur, Ph.D., in making this determination. (Doc. 26 at 15.) The Commissioner responds by arguing that because the ALJ properly found at step two that Plaintiff's mental impairments were non-severe, the ALJ appropriately did not include any mental limitations in Plaintiff's RFC. (Doc. 26 at 15–18.)

At the second step of the evaluation process, an ALJ determines whether the claimant has a severe impairment. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). The ALJ here found that Plaintiff's medically determinable mental impairments of anxiety disorder, depressive disorder, and personality disorder, considered singly and in combination, did not cause more than minimal limitations in his ability to perform basic mental work activities, and were, therefore, non-severe. Tr. 83.

When a Plaintiff alleges mental impairments, the ALJ must use a "special technique" to determine Plaintiff's degree of limitation by evaluating limitations in four categories, often referred to as paragraph B criteria, 20 C.F.R. Subpart P, Appendix 1, §12.00. 20 C.F.R. § 416.920a(a), (b). The categories are whether the claimant can: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 416.920a(c)(3). The ALJ rated Plaintiff as having mild limitations in the first three categories and no limitation as to the last category. Tr. 83–85. These ratings equate to a non-severe mental impairment. 20 C.F.R. § 416.920a(d)(1) ("If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe,

unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

Here, the ALJ determined Plaintiff's mental impairments were not severe. Tr. 85. Although the ALJ recognized Plaintiff's anxiety disorder, depressive disorder, and personality disorder, the ALJ found they did not, "considered singly and in combination, . . . cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities . . . ." Tr. 83. In making this finding, the ALJ cited to two sources: Dr. Anderson's opinion, Tr. 625–631, and Plaintiff's own function report, dated February 23, 2016, Tr. 283–293. In reviewing Plaintiff's function report, the ALJ noted that Plaintiff makes simple meals and does his own chores, drives, goes out alone, does his own shopping, and handles his own personal finances. Tr. 84. He also continues to do some work repairing sprinkler systems. *Id.*

Upon making a finding of a non-severe mental impairment, the ALJ proceeded to articulate an RFC assessment to reflect the degree of mental limitation found in the paragraph B mental function analysis, as required by SSR 96-8p. Tr. 85. SSR 96-8p states, in pertinent part:

> The psychiatric review technique described in 20 CFR [] 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. **The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.**

SSR 96-8p (emphasis added). The ALJ complied with this requirement and conducted a mental RFC assessment by reviewing the opinions of Dr. Anderson, Dr. Levasseur, and a treatment note from EAU Gallie Clinic.[3] Tr. 85–86. This is where Plaintiff contends error was made.

### 1. Dr. Wende Anderson's Opinion

First, Plaintiff contends that the ALJ applied the incorrect legal standard to the opinion of Wende Anderson, Psy.D, to whom the Social Security Administration Division of Disability Determinations referred Plaintiff for a mental status examination. (Doc. 26 at 13); Tr. 626–631. Dr. Anderson saw Plaintiff on March 2, 2016. Tr. 626. During the examination, Dr. Anderson noted Plaintiff had concentration problems, racing thoughts, pressured speech, distractibility, circumstantiality, and frequent tangentiality. Tr. 629. Thus, Dr. Anderson observed that Plaintiff's attention and concentration capabilities appeared to fall below normal limits. Tr. 630. She further stated that Plaintiff's intelligence, fund of information, judgment, and insight all fell below the average range. Tr. 630.

However, both Plaintiff's recent events memory and remote memory fell within normal limits. Tr. 630. While Dr. Anderson noted Plaintiff's speech was intermittently slurred, particularly when pronouncing complex words like "neuropathy," his speech was otherwise normal in terms of content. Tr. 629. He was cooperative and pleasant during the interview and was able to follow simple instructions. *Id.* Plaintiff also gave a somewhat organized account of his past history, despite his reported memory difficulties and distractibility. Tr. 630.

Ultimately, Dr. Anderson opined that Plaintiff had partial symptoms of Post-Traumatic Stress Disorder, as well as symptoms of Bipolar Disorder. Tr. 630. Dr. Anderson stated that

---

[3] Plaintiff does not argue the ALJ committed error in assigning weight to the EAU Gallie Clinic records.

Plaintiff could benefit from a psychiatric evaluation and counseling. Tr. 630. The doctor then concluded that Plaintiff's prognosis was "guarded." *Id.*

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel*, 631 F.3d at 1178–79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. § 416.927(c).[4] A treating doctor's opinion is generally entitled to more weight, and an ALJ must articulate good cause for discounting a treating doctor's opinion. 20 C.F.R. § 416.927(c)(2). However, the opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). All opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. *See* 20 C.F.R. § 416.927(b).

The ALJ gave Dr. Anderson's[5] opinions little weight, explaining:

> The medical record indicated the claimant was functionally stable and able to work; indeed, he continued to work after onset. He worked on his own or with a helper that he hired. He lived independently. While he appeared to suffer from some mental health

---

[4] Although the Commissioner has adopted new regulations for considering medical opinions for claims filed on or after March 27, 2017 (*see* 20 C.F.R. § 416.920c), the claims here were filed in 2015, so the rules in § 416.927 apply.

[5] The ALJ continuously refers to Dr. Anderson as Dr. Wende in her opinion. This appears to be a scrivener's error because "Wende" is Dr. Anderson's first name.

> issues, the evidence showed they do not interfere with his ability to work. Rather, the majority of limitations related to his physical impairments rather than mental ones. Indeed, he received minimal mental health treatment, and other than Xanax, did not take any medications. Moreover, he has never been in inpatient treatment during the relevant period.

Tr. 85.

Plaintiff argues that the ALJ did not have good cause to discount Dr. Anderson's opinions in that: (1) the ALJ impermissibly held Plaintiff's inability to afford mental health treatment against him when weighing the opinion of Dr. Anderson; and (2) other alleged treating doctors found similarly to Dr. Anderson regarding Plaintiff's mental limitations, but were not discussed by the ALJ in affording Dr. Anderson's opinions little weight.

As to Plaintiff's argument that the ALJ held Plaintiff's inability to afford mental health treatment against him in evaluating Plaintiff's RFC, Plaintiff points to *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003), for the proposition that "when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." (Doc. 26 at 13.) The Commissioner does not appear to have responded to this argument.

Here, like in *Ellison*, the ALJ did not rely on Plaintiff's non-compliance to seek additional psychiatric treatment and counseling as the *sole* ground for denial of disability benefit. A review of the ALJ's decision reveals that the finding was primarily based on the fact that Plaintiff continued to work after the date of onset and that Plaintiff's complaints were mainly due to physical pain, not mental limitations. Any mental limitation did not appear to interfere with Plaintiff's ability to work. Therefore, Plaintiff's reliance on *Ellison* is misplaced. While there was record evidence that Plaintiff could not afford additional mental health treatment (Tr. 621, 668),

the ALJ's failure to determine whether Plaintiff could afford mental health treatment does not constitute reversible error because there were other, clearly articulated reasons on which the ALJ discounted Dr. Anderson's opinions. *Ellison*, 355 F.3d at 1275.

Next, Plaintiff argues that it was error for the ALJ to conclude that Dr. Anderson's opinion was inconsistent with Plaintiff's treatment history since there was subsequent mental health treatment that was consonant with Dr. Anderson's opinion. (Doc. 26 at 13–14.) Plaintiff points to two other visits where Plaintiff was seen only once by two separate doctors for mental health complaints. (Doc. 26 at 13–14.) On July 28, 2016, Dr. Ryan Barnett, Psy.D., saw Plaintiff for treatment of anxiety at Brevard Health Alliance. Tr. 710. Dr. Barnett's treatment notes indicated that Plaintiff reported symptoms of worrying, racing thoughts, increased heart rate, breathing difficulties, low frustration tolerance, tenseness, and fidgeting. *Id*. Dr. Barnett diagnosed Plaintiff with anxiety and recommended that Plaintiff follow up with psychiatry and return to his office in four weeks. Tr. 711. Plaintiff does not point to evidence that he continued treatment. Then, on December 7, 2016, Plaintiff saw Dr. Peter Brancato, M.D., at BHA Sarno Family Medicine and reported concentration problems, trouble sleeping, and anxiety. Tr. 733. Dr. Brancato diagnosed Plaintiff with Major Depressive Disorder. Tr. 734.

Plaintiff argues, without further elaboration, that these findings are consistent with those of Dr. Anderson, but that the ALJ failed to account for them in her opinion. (Doc. 26 at 14.) The Commissioner appears to assert that these records did not indicate that Plaintiff's mental health condition would have affected Plaintiff's ability to work. (Doc. 26 at 17.) It is true that diagnoses of anxiety and depression do not establish the existence of a severe impairment. *See Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (per curiam) (unpublished). Further, the diagnoses, in and of themselves, do not "'reveal the extent to which they limit [Plaintiff's] ability

to work.'" *Groettum v. Comm'r of Soc. Sec.*, No. 2:17-cv-611-FtM-29CM, 2019 WL 488280, at *8 (M.D. Fla. Jan. 7, 2019) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005), *report and recommendation adopted*, 2019 WL 290598 (M.D. Fla. Jan. 23, 2019). Moreover, the diagnoses issued by these doctors—anxiety and depression—were considered by the ALJ in evaluating Plaintiff's paragraph B criteria. Tr. 83; *Hutchinson*, 408 F. App'x at 327.

Of more concern is the ALJ's lack of discussion and assignment of weight to the opinions of Dr. Brancato and Dr. Barnett. While they each examined Plaintiff only once and thus were not entitled to deference, *McSwain*, 814 F.2d at 619, and even though the ALJ need not refer to every piece of evidence in her decision, *Castel*, 355 F. App'x at 263, the Eleventh Circuit has reversed in situations where an ALJ neglects to discuss an opinion at all, "much less assign a particular weight to it," unless such error was harmless. *Baez v. Comm'r of Soc. Sec.*, 657 F. App'x 864, 870 (11th Cir. 2016). The undersigned concludes that such error here was harmless.

In evaluating Dr. Anderson's opinion, the ALJ noted that Plaintiff "received minimal mental health treatment." Tr. 85. Aside from the visits with Dr. Brancato and Dr. Barnett, Plaintiff does not direct the Court to any instances in which he sought mental health treatment on his own initiative or to any additional mental health treatment records that the ALJ failed to consider. Thus, the ALJ must have necessarily considered the opinions of Dr. Brancato and Dr. Barnett in assessing Plaintiff's "mental health treatment." Indeed, two visits for mental health treatment may be reasonably viewed as minimal. Unlike in *Baez*, where the ALJ failed to discuss the opinion of the examining physician at all, 657 F. App'x at 870, here, the ALJ did consider the opinions by referencing them in her discussion discounting Dr. Anderson's opinion, Tr. 85; *see also Zawatsky v. Comm'r of Soc. Sec.*, No. 6:13-cv-1976-Orl-18DAB, 2015 WL 179284, at *1, 4 (M.D. Fla. Jan. 14, 2015) (adopting an R&R that found harmless error where the ALJ clearly considered an

opinion without specific reference to it). Further consideration of Dr. Brancato's and Dr. Barnett's opinions would not demonstrate that the existence of Plaintiff's limitations were greater than what the ALJ opined. *See* 657 F. App'x at 870. Thus, I conclude that the ALJ's failure to discuss these two opinions explicitly amounted to harmless error.

Dr. Anderson's opinion was not entitled to deference because she saw Plaintiff on only one occasion. Tr. 626; *McSwain*, 814 F.2d at 619. And the ALJ clearly stated with particularity the weight given to her opinion and the reasons for doing so. *Winschel*, 631 F.3d at 1178–79. Thus, I find that the ALJ evaluated Dr. Anderson's medical opinion in accordance with the appropriate standards and supported the conclusions reached by reference to substantial evidence.

### 2. Dr. James Levasseur, Ph.D's Opinion

Finally, Plaintiff argues that the ALJ should not have given the opinion of state agency psychological consultant, Dr. James Levasseur, Ph.D., little weight. (Doc. 26 at 14.) Specifically, Dr. Levasseur's report, dated March 7, 2017, noted that Plaintiff was moderately limited in maintaining attention and concentration for extended periods as well as in his ability to complete a normal workday and workweek, with "occasional distractibility." Tr. 72. As to his findings on Plaintiff's understanding and memory, Dr. Levasseur stated that history and observations indicated Plaintiff had the capacity to understand and retain simple and complex instructions. Tr. 73. He also found that Plaintiff had a limited ability to sustain concentration, persistence, and pace for extended periods, but should be able to complete a variety of tasks for six to eight hours in an eight-hour period at an appropriate pace, and sustain this level across days and weeks. Tr. 73.

As to this opinion, the ALJ stated:

> This determination seems largely based on the opinion of Dr. Wende [Anderson], which as noted above is afforded little weight. This determination is not consistent with the claimant's treatment history. Moreover, the record indicated the claimant was functionally stable and

> able to work, and he lived independently. He received minimal mental health treatment and other than Xanax, did not take any meds. Moreover, he has never been in inpatient treatment during the relevant period.

Tr. 86.

Plaintiff argues that the ALJ's explanation of her rejection of Dr. Levasseur's opinion is inadequate and that the ALJ was simply "playing doctor" by inserting her opinion for those of medical professionals. (Doc. 26 at 15). However, the Commissioner responds that Dr. Levasseur's opinion does not, in and of itself, establish a mental impairment. (*Id.* at 20.) First, he only saw Plaintiff on one occasion. Tr. 61–75. Further, the ALJ acknowledged Dr. Levasseur's opinion by noting that the doctor concluded that Plaintiff only had mild limitations in his ability to perform mental work-related activities. Tr. 85–86. But the ALJ also pointed out that Plaintiff was functionally stable, worked at least some after the alleged onset date, and lived independently. Tr. 86. Further, the ALJ pointed out that Plaintiff lacked a mental health treatment history. He was seen on only a few occasions for mental health complaints, and while he received diagnoses, never pursued treatment, other than taking Xanax. Tr. 86. Given the record as a whole substantial evidence supports the ALJ's decision to afford Dr. Levasseur's opinion little weight.

In sum, the ALJ provided a sufficiently detailed analysis of the evidence of record, supplied a rationale for her findings, and her conclusions are supported by the evidence she cites. As the Commissioner's administrative decision was made in accordance with proper legal standards and is supported by substantial evidence, it is due to be affirmed.

## V. RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **AFFIRM** the Commissioner's final decision in this case; and
2. **DIRECT** the Clerk to enter judgment accordingly and **CLOSE** the file.

## **NOTICE TO PARTIES**

A party has **fourteen days** from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 17, 2019.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties